UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

1-800-BATHTUB LLC, a Michigan
Limited Liability Company, and Hersch's
Inc., a Michigan Corporation

           Plaintiffs,

vs.

WINDSTREAM COMMUNICATIONS
LLC, a Delaware Limited Liability Company,
and PATRIOT COMMUNICATIONS
LLC, a Delaware Limited Liability Company,

           Defendants.
_____/

HICKEY, CIANCIOLO, FINN & ATKINS P.C.
Steven M. Hickey (P33142)
Attorneys for Plaintiffs
901 Wilshire Dr., Ste 550
Troy, MI 48084
(248) 247-3300
smh@hclawyers.com
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, 1-800-Bathtub LLC ("Bathtub"), and Hersch's Inc.

("Hersch's"), by their attorneys Hickey, Cianciolo, Finn & Atkins, state for

their Complaint against Defendants Windstream Communications, LLC

("Windstream"), and Patriot Communications, LLC ("Patriot"), as follows:

## NATURE OF ACTION - JURISDICTION

1. Plaintiffs Bathtub and Hersch's bring this action for money damages pursuant to Section 207 of the Communications Act of 1934, as Amended, 47 U.S.C. § 207 (the "Act"), for Defendant Windstream's and Patriot's violations of Section 201(b) of the Act by engaging in unjust, unreasonable and unlawful practice. These claims present questions under Federal law that provide this Court with jurisdiction under 28 U.S.C. § 1331. Plaintiffs also brings claims against the Defendants for negligence and for tortious interference with Plaintiffs' business relationships over which this Court has supplemental jurisdiction under 28 U.S.C. § 1367 and diversity jurisdiction under 28 U.S.C. § 1332.

## PARTIES

2. Plaintiff 1-800-Bathtub LLC ("Bathtub") is a Michigan Limited Liability Company with its only office in the City of Oak Park, County of Oakland, State of Michigan.

3. Plaintiff Hersch's is a Michigan corporations with its offices in the City of Oak Park, County of Oakland, State of Michigan.

4. Defendant Windstream is a Delaware limited liability company with

2

headquarters in Little Rock, Arkansas. Windstream is registered to, and does, conduct business in the State of Michigan.

5. Defendant Patriot is a Delaware limited liability company with headquarters in Los Angeles, California, doing business in the State of Michigan.

6. Defendant Windstream is a telecommunications carrier subject to the Act, 47 U.S.C. § 153(11).

7. Defendant Patriot provides interstate telecommunications services, acts as a reseller or sales agent for Defendant Windstream and is, therefore, also subject to the Act.

## STATEMENT OF MATERIAL FACTS

8. In 2001, Edward Hersch, founder and sole Member of Plaintiff Bathtub, lawfully acquired the rights to use and control the 1-800 toll free number 1-800-288-4882 ("1-800-Bathtub," referred to hereafter as the "Number"). These rights are referred to in F.C.C. regulations as the rights of the "Subscriber." 47 C.F.R. § 52.101(e).

9. Hersch and his business partner, Randy Rosens, intended to market leases or licenses for the use of this toll free number in "Shared Use"

3

agreements to businesses engaged in bathtub and shower enclosure relining around the United States and elsewhere.

10. Hersch formed a limited liability company under Michigan law for the purpose of carrying this business plan forward. In 2002 he filed Articles of Organization with the State of Michigan that created the Plaintiff Bathtub. He then assigned his Subscriber rights in the Number to Bathtub.

11. Bathtub engaged the services of McLeod Communications, for whom Defendant Windstream is a successor in interest, to serve as the telecommunications carrier for the Number, and the "Responsible Organization" ("RespOrg" as defined in 47 C.F.R. § 52.101(b)), for management and administration of the Number in Shared Use by the customers of Bathtub. This was accomplished by adding an account to existing accounts maintained by another business owned by Bathtub's founder (Plaintiff Hersch's, Inc.) with that telecommunications carrier.

12. In 2002, Bathtub entered into a Marketing Services Agreement ("MSA"), with ReBath LLC ("ReBath"), a large national seller of bathtub and shower enclosure relining products and marketer of relining services.

13. Under the Agreement between Bathtub and Rebath, Bathtub engaged Defendant Windstream (through its predecessors in interest), to establish a system of sub-accounts for the Number to route toll free calls to distributors and franchisees of Rebath, and to issue bills directly to these distributors/franchisees, and to ReBath corporate, as appropriate, and as allowed under the MSA. Under this arrangement, and as set forth in the MSA, Bathtub was to remain the Subscriber for the Number, and was to be treated as the holder of the account with the telecommunications carrier.

14. This type of shared use arrangement was an accepted and widely known use of toll free numbers at the time, and in years since, and the management of such a shared use or bundled services agreements was specifically addressed in ATIS Industry Guidelines (the "Guidelines"), applicable to toll free number business. ATIS Industry Guidelines for Toll-Free Number Administration, April, 2017, ATIS Doc. # ATIS-0417001-003.

15. Under these Guidelines, Hersch's Inc./Bathtub was to be considered the Customer of the carrier in any shared use or bundled services agreement, like the MSA with ReBath, as Bathtub was the provider of the bundled services/shared use arrangement. Guidelines, Par. 1.2. This

allegiance to Hersch's Inc./Bathtub was to be followed regardless of where billings for carrier services were directed.

16. For over 15 years, this agreement between Hersch's, Inc./Bathtub and ReBath remained in effect, with all parties performing thereunder, until Rebath submitted false documentation to Windstream in 2017 requesting that the account for the Number and all its sub-accounts be transferred to Defendant Patriot.

17. The preparation and submission of this false documentation was facilitated by, and with the assistance of, Defendant Patriot, who sought financial gain as a result of the transfer.

18. Windstream wrongfully accepted this false documentation and wrongfully accepted the transfer request submitted by ReBath through the wrongful efforts of Patriot. This transfer was effected on April 27, 2017.

19. By causing the wrongful transfer of the accounts for the Number from Windstream to Patriot, control and use of the Number was wrongfully taken from Plaintiff.

20. Prior to the transfer of the subject accounts from Windstream to Patriot, Defendants knew that Plaintiff was the Subscriber of the Number

and that Hersch's Inc. was owner of the accounts with Windstream held by or on behalf of Bathtub.

21. Prior to the transfer of the subject accounts from Windstream, Defendants knew that ReBath had no enforceable or lawful right or power to exercise control over the Number sufficient to effectuate a transfer of the Number and related accounts.

22. After the transfer of the subject accounts to Patriot, Defendants worked in tandem to affix a digital designation to the accounts intended to inhibit or preclude any ability by Bathtub or Hersch's Inc. from regaining control over the Number and the accounts associated with it.

23. This wrongful transfer of the accounts for the Number took place without any notice to Bathtub or to Hersch's, Inc., and was not discovered by Plaintiffs until months later, by which time ReBath had decided it would no longer pay fees to Bathtub under the MSA.

24. Once it gained complete control over the Number, Rebath willfully breached the MSA and stopped making payment of fees to Bathtub required under that Agreement.

25. By the time Rebath terminated payments to Bathtub under the MSA,

ReBath and its franchisees had become the only entities in shared use of the Number. Thus, the non-payment of fees under the MSA resulted in a complete loss of revenue to Bathtub, beginning in 2018.

## COUNT I

### Violations of the Communications Act

26. Plaintiff incorporates the allegations in paragraphs 1 - 24 as if set forth word-for-word in this Count.

27. The unjust and unreasonable misconduct of the Defendants, as telecommunications carriers and/or affiliates, resulted in Bathtub's loss of its use and control over the Number by causing a wrongful transfer of the Number from accounts with Windstream controlled by Hersch's, Inc./Bathtub to accounts with Patriot controlled by Rebath.

27. This wrongful transfer of the use and control over the Number was facilitated by the following unjust, unreasonable, willful and wanton acts of the Defendants:

    a) by Patriot's efforts to encourage and educate ReBath personnel to prepare an erroneous and fraudulent Letter of Agency/Authority (LOA) in which Rebath declared itself to be the lawful Subscriber to the Number, and authorizing Windstream to release the Number and related accounts to Patriot;

b) by Windstream's acceptance of the fraudulent LOA and transferring the Number and its accounts to Patriot, knowing that the accounts and Subscription rights to the Number belonged to Hersch's/Bathtub and had been related to a shared use arrangement for over 15 years;

c) by the concerted actions of Defendants Patriot and Windstream in placing a digital "lock" on the Number, once transferred, so as to preclude a transfer back to Hersch's/Bathtub;

d) by Defendant Windstream's disclosure to Patriot of proprietary information regarding Hersch's/Bathtub's account for the Number that facilitated Patriot's efforts to elicit ReBath's interest in establishing a business relationship with Patriot, and that was used to encourage ReBath to prepare and submit (with substantial assistance from Patriot) a fraudulent or otherwise wrongful LOA to Windstream designed to cause the unlawful, wrongful transfer of the Number out of Plaintiff's control;

e) by Patriot's use of its relationship with Windstream to obtain proprietary information regarding Hersch's/Bathtub's account for the Number that facilitated Patriot's marketing efforts to elicit ReBath's interest in establishing a business relationship with Patriot, and used to encourage ReBath to prepare and submit (with substantial assistance from Patriot) a fraudulent or otherwise wrongful LOA to Windstream designed to cause the unlawful, wrongful transfer of the Number out of Plaintiffs' control.

28. 47 U.S.C. § 201(b) provides that all practices for and in conjunction with communication service that are unjust and unreasonable are unlawful.

29. The practices and conduct of the Defendants, as telecommunications carriers or affiliates, and as described above, were unlawful under the Act,

giving rise to this cause of action under 47 U.S.C. § 207. The unlawful practices and conduct of the Defendants include, but are not limited to, violations of 47 U.S.C. §§ 222 and 258.

30. Defendants unlawful practices and conduct have directly and proximately resulted in lost profits and other damages to Plaintiffs for which these Defendants are liable under 47 U.S.C. § 206 of the Act, together with costs and reasonable attorney's fees.

WHEREFORE, Plaintiffs prays this Court will award it money damages in excess of $75,000, together with costs and reasonable attorneys fees.

## COUNT II

### Tortious Interference With Business Relations

31. Plaintiffs incorporate the allegations in paragraphs 1 - 29 as if set forth word-for-word in this Count.

32. At all times pertinent to this cause of action, there existed a valid business relationship between Plaintiffs and Windstream, and between Plaintiff Bathtub and Rebath.

33. At all times pertinent to this cause, Defendants had knowledge of

those business relationships.

34. By their practices, conduct, acts and omissions, as set forth above in par. 27 of this Complaint, Defendants intentionally interfered with and caused a breach in these business relationships.

34. As a result of such interference and breaches in these business relationships, Plaintiffs have sustained actual damages in the form of lost profits and otherwise, for which these Defendants are liable.

WHEREFORE, Plaintiffs pray this Court will award them money damages in excess of $75,000, together with costs and reasonable attorneys fees.

## COUNT III

### Conversion - As to Defendant Patriot

35. Plaintiffs incorporate the allegations in paragraphs 1 - 33 as if set forth word-for-word in this Count.

36. Defendant Patriot, in an effort to secure a new customer and all of its accounts and sub-accounts for the use of ReBath's several toll free numbers, assisted and facilitated the theft of the toll free number "1-800-Bathtub" from Plaintiff by aiding and abetting ReBath in preparing and

11

submitting an LOA to Windstream to effectuate a the wrongful transfer of that Number to Patriot's platform in early 2017.

37. Specifically, Patriot aided and abetted the theft of the Number by ReBath in the following ways, without limitation:

    a) by telling Rebath that its MSA with Plaintiff was likely "illegal" under F.C.C. regulations, and thus unenforceable, even though Patriot was without a proper basis for making this claim;

    b) by telling ReBath that it was truly the "Subscriber" to the Number because it received and paid bills from Windstream directly, disregarding industry guidelines that clearly established that in a share use, bundled services arrangement Plaintiff Bathtub was properly deemed the Subscriber;

    c) by tutoring Rebath personnel on the preparation and submission of a fraudulent LOA to Windstream to facilitate the transfer of the Number to Patriot's platform.

38. Patriot committed these acts despite knowing that Bathtub was the rightful Subscriber to the Number, that the account at Windstream under which the Number was maintained was an account held by Hersch's Inc.

39. Patriot engaged in this conduct knowing that Plaintiffs were not aware of, nor given notice of, the efforts being made to steal the Number from their use and control. Patriot gave no notice of the proposed transfer of the Number, preferring stealth as the method to complete the conversion

unimpeded and unopposed by Plaintiffs.

40. After theft of the Number was complete, and after becoming aware that Plaintiffs had, months later, learned of the theft, Patriot aided Rebath in securing a "lock" on the Number so as to inhibit the ability of Plaintiffs to regain its rightful control and use of the Number.

41. These acts, committed by Patriot to aid ReBath in its theft of the Number from Plaintiffs and to conceal or aid in the concealment of the property known to have been stolen, fall within the proscribed conduct in Michigan's conversion statute, MCLA 600.2919(1)(b), thus exposing Patriot to liability for treble damages, and for payment of Plaintiffs' attorney's fees incurred in securing relief in this cause.

42. Patriot's acts in aiding ReBath's conversion of the Number was a direct and proximate cause of the damages suffered by Plaintiffs for the lost value of the Number, lost profits resulting from loss of use of the Number, and otherwise.

WHEREFORE, Plaintiffs pray this Court will award them damages in excess of $75,000 and treble damages against Defendant Patriot, together with costs and reasonable attorneys fees incurred by Plaintiffs in securing

relief.

## COUNT IV

### Negligence - As to Defendant Windstream

43. Plaintiffs incorporate the allegations in paragraphs 1 - 41 as if set forth word-for-word in this Count.

44. By virtue of their longstanding engagement by Hersch's to provide Bathtub with telecommunication services, and by undertaking to serve as the designated RespOrg for Plaintiffs in relation to the Number, Defendant Windstream owed Plaintiffs a duty to manage and administer the Number in keeping with all good industry practices, and in compliance with industry guidelines so as to insure that Plaintiff's Subscriber rights were maintained, i.e., so as to insure that Plaintiffs maintained their use and control over the Number.

45. Defendant Windstream breached its duties to Plaintiffs in several respects, including but not limited to the following:

    a) By disclosing to Patriot and/or Rebath certain proprietary information regarding the account maintained by Plaintiff swith Windstream for the Number, which information was used by Patriot to sell its services to ReBath, and to facilitate the transfer of the Number and accounts associated with the Number to the exclusive use and control of ReBath;

14

b) By accepting the LOA submitted by ReBath and thereby allowing the transfer of the Number and corresponding accounts to the exclusive use and control of ReBath, despite the fact that Plaintiff Bathtub were the only and rightful Subscriber for this Number, a fact which Defendant Windstream knew, or in the exercise of reasonable care, should have known;

c) By affixing to the Number, and corresponding accounts, the code that would allow ReBath to "lock" the Number (once transferred) so as to inhibit the ability of Plaintiffs to regain use and control over the Number.

46. These breaches by Defendant Windstream directly and proximately resulted damage to the Plaintiffs in the form of lost profits and otherwise, for which Defendant is liable.

WHEREFORE, Plaintiffs pray this Court will award them money damages in excess of $75,000, together with costs and reasonable attorneys fees.

## COUNT V

### Negligence - As to Defendant Patriot

47. Plaintiffs incorporate the allegations in paragraphs 1 - 45 as if set forth word-for-word in this Count.

48. Defendant Patriot owed a duty to Plaintiffs not to steal or aid in the theft of Plaintiffs' toll free Number and accounts, or to interfere with

Bathtub's rights as a Subscriber to the Number.

49. Defendant Patriot breached its duties to Plaintiffs by aiding in and facilitating the transfer of the Number from Windstream to Patriot's platform when it knew, or in the exercise of reasonable care should have known that a) Bathtub was the rightful Subscriber to the Number, b) the accounts at Windstream under which the Number was maintained were held by Hersch's Inc. on behalf of Bathtub, and c) transfer of the Number to Patriot's platform would cause Plaintiff sto lose use and control of the Number.

50. Plaintiffs were damaged by the wrongful conduct and breaches of duty by Defendant Patriot in aiding Rebath's misappropriation of the Number and transfer of accounts under which that Number had been maintained. These breaches and misconduct by Defendant Patriot were a direct and proximate cause of such damage to Plaintiffs.

WHEREFORE, Plaintiffs pray this Court will award them damages against Defendant Patriot in excess of $75,000, together with costs and reasonable attorneys fees incurred by Plaintiff in securing relief.

HICKEY, CIANCIOLO, FINN & ATKINS P.C.

By: _____
Steven M. Hickey (P33142)
Attorney for Plaintiffs
901 Wilshire Dr., Ste. 550
Troy, MI 48084
(248) 247-3300
smh@hclawyers.com

Dated: April 20, 2020

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury in this case.

HICKEY, CIANCIOLO, FINN & ATKINS P.C.

By: _____
Steven M. Hickey (P33142)
Attorney for Plaintiffs
901 Wilshire Dr., Ste. 550
Troy, MI 48084
(248) 247-3300
smh@hclawyers.com

Dated: April 20, 2020